UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JAMES F. CLEAVER and
MEREDITH A. CLEAVER,
Debtors. No. 13-09-14164 SR

**MEMORANDUM OPINION SUSTAINING**
**TRUSTEE'S OBJECTION TO CONFIRMATION**

This matter came before the Court to consider confirmation of Debtors' First Amended Plan ("Plan") (doc 16) and the Trustee's objection thereto (doc 20). Debtors appear through their attorney Eric Dixon. Trustee Kelley Skehen is self-represented. This is a core proceeding. 28 U.S.C. § 157(b)(2)(L). For the reasons set forth below, the Court sustains the Trustee's objection to confirmation and will grant the Debtors three weeks to file amendments and a new plan.

**INTRODUCTION**

When Congress amended the bankruptcy laws in 2005, it intended to require debtors to pay some or all of the debt owed to their unsecured creditors if they had the ability to do so. "The heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. No. 109-31(I), 2005 U.S.C.C.A.N. 88, 89. Congress also demonstrated a determination to replace judicial discretion with precise rules-based calculations. In re Brady,

361 B.R. 765, 772 (Bankr. D. N.J. 2007). "Section 707(b)(2), commonly known as the 'means test,' sets out a structured method of calculating reasonably necessary expenses that is designed to reduce the discretion of bankruptcy courts and to ensure that debtors pay more to their unsecured creditors." In re Lasowski, 575 F.3d 815, 818 (8th Cir. 2009)(citing Coop v. Frederickson (In re Frederickson), 545 F.3d 652, 658 (8th Cir. 2008), cert. denied, 129 S.Ct. 1630 (2009)). See also Marianne B. Culhane and Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way?, 13 Am. Bankr. Inst. L. Rev. 665, 679-80 (2005):

> Congress, wisely or not, has replaced the standard of substantial abuse with a rule on ability to pay--the highly detailed and hard-edged means test--in an attempt to reduce judicial discretion. First, the means test deprives judges of discretion on what counts as income, specifically overruling cases holding Social Security payments to be disposable income, despite their exemption under federal law. Next, the means test picks Census Bureau income medians, rather than relying on judicial views of how much income should subject a debtor to special scrutiny. Third, the means test adopts IRS allowances to fix exact dollar deductions in very important categories, rather than letting judges decide what is reasonable. In other categories, where the debtor's actual expenses are used, sometimes they are limited by "reasonable" or "necessary," as with cure payments, and sometimes not, as with secured debt pure and simple. Fourth, the means test includes special deductions not on the IRS CFS list, deductions which clearly overrule prior case law disallowing such expenses as care for disabled and elderly household members, and some private school expenses. Finally, the means test sets specific dollar amounts as triggers for the presumption of abuse, in place of various court-developed tests. Congress adopted rules, not discretionary standards, to govern ability to pay. Those rules are uniform and

predictable, as Congress intended. They communicate to debtors and other parties in interest what is expected.

(Footnotes omitted.)

**CONFIRMATION**

Section 1325 of the Bankruptcy Code governs confirmation of a chapter 13 plan. Section 1325(b)(1) provides as follows:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

Section 1325(b)(2), in turn, explains how to determine "disposable income" under section 1325(b)(1)(B). Section 1325(b)(2) provides, in relevant part:

For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended-

(A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed.

11 U.S.C. § 1325(b)(2).

> To establish some structure to the lengthy and complicated statutory provisions for determining "projected disposable income" and the applicable "commitment period" in chapter 13 cases, the Judicial Conference of the United States has adopted Official Bankruptcy Form 22C, entitled the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." Part I of this form involves a calculation of "current monthly income," as defined in 11 U.S.C. § 101(10A). Unless there are certain factors, not applicable here, the current monthly income is the debtor's monthly disposable income, shown on Line 59 of the form. Multiplying this amount by the number of months in the commitment period gives the total required to be distributed to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1)(B).

In re Bermann, 399 B.R. 213, 215 (Bankr. E.D. Wis. 2009).

If the debtors' income exceeds their state's median income, they must compute allowable living expenses under 11 U.S.C. § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). And, their commitment period must be 60 months. 11 U.S.C. § 1325(b)(4).

> Part IV of the form, which is applicable to above-median income filers, requires that the filer set forth the permissible deductions from income under Standards set by the Internal Revenue Service. Part V, relying upon the gross income and deductions from income amounts contained in Parts I and IV, respectively, seeks to define "disposable income" for above-median income filers for the purpose of 11 U.S.C. § 1325(b)(2). Part VI provides the place for listing any additional living expenses claimed to be allowable under § 707(b)(2)(A)(ii)(I).
>
> For purposes of section 1325(b)(3), the relevant provision of section 707(b)(2)(A)(ii)(I) provides:
>
> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the

> debtor resides, as in effect on the date of the order for relief ... for the debtor....
>
> 11 U.S.C. § 707(b)(2)(A)(ii)(I).

Berman, 399 B.R. at 215-16.

**DISCUSSION**

The Trustee and Debtors computed identical current monthly income of $8,387.11. The Debtors annualized current monthly income is $100,645.32, which exceeds the New Mexico median income for a 3 person household ($53,018.00). Therefore, their "applicable commitment period" is 60 months. 11 U.S.C. § 1325(b)(4). And, they must compute allowable living expenses under 11 U.S.C. § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3).

The Trustee objected because 1) the Plan does not contribute income tax refunds, if any, to the Plan; 2) the Plan proposes to pay Ford Motor Credit directly outside the Plan; 3) the Plan fails to calculate disposable income in ¶ 7.2; 4) the Plan fails to increase payments after payment in full of retirement loans; 5) the Plan fails to treat a secured debt of High Plains FCU and 6) Debtors' Form 22C has five incorrect entries. Each will be discussed.

INCOME TAX REFUNDS

Debtors' Plan does not provide for payment of income tax refunds. Plan, ¶ 1.2 (doc 16). "In the Chapter 13 context, income tax refunds are disposable income." In re Juarez, ___ B.R. ___, 2009 WL 2922802 at *2 (Bankr. D. N.M. 2009)(citing

Midkiff v. Stewart (In re Midkiff), 342 F.3d 1194, 1202 n. 4 (10th Cir. 2003)). By not providing for tax refunds, the Debtors are not contributing all projected disposable income as required by the disposable income test. See 11 U.S.C. § 1325(b)(1)(B). The Trustee's objection on this ground is well taken.

FORD MOTOR CREDIT

Trustee withdrew this objection at confirmation.

DISPOSABLE INCOME

Trustee's objection is that the Plan, ¶ 7.2 is blank. This should state the minimum amount of payments required to satisfy the disposable income test. This objection is well taken because creditors and the trustee need to know the minimum amount the plan must pay to meet this requirement.

RETIREMENT LOAN PAYMENTS

At trial, Debtors testified that they have two retirement loans that are paid $67.49 semi-monthly. Under 11 U.S.C. § 1324(f) any amounts required to repay qualified retirement loans "shall not constitute 'disposable income' under section 1325." See In re Glisson, ___ B.R. ___, 2009 WL 5322426 at *2 (Bankr. S.D. Ga. 2009). The Trustee seeks an increase in plan payments once the retirement loans are repaid. This objection is well taken. See Lasowski, 575 F.3d at 820.

The Court notes, however, that Debtors did not deduct the loan payments on their Form 22C line 55. Debtors should amend

Form 22C to take this deduction and amend their plan to provide for increased payments when the retirement loans are repaid.

HIGH PLAINS FCU

Trustee withdrew this objection at confirmation because the collateral had been repossessed prepetition.

FORM 22C

The Trustee also objected to five expense entries on Debtors' Form 22C. They are 1) line 33 for "court-ordered payments"; 2) line 37 for "telecommunication services"; 3) line 43 for "educational expenses for dependent children under 18"; 4) line 44 for "additional food and clothing expense"; and 5) line 47(d) for the average monthly payment to Saxon Mortgage Service, Inc. The Debtors' Form 22C computes monthly disposable income of $535.61. The Trustee's version of Form 22C computes monthly disposable income of $1,900.61. To resolve this discrepancy the Court will examine each expense item to which the Trustee has objected.

COURT ORDERED PAYMENTS

The Debtors list $528.44 as an expense for court ordered payments. Their statement of financial affairs, question 4, states that the Debtors were being garnished $528.44 per pay period. This debt is a pre-petition unsecured debt that will be discharged. It does not continue after the bankruptcy filing.

These types of payments are not deductible on Form 22C. 11 U.S.C. § 707(b)(2)(A)(ii)(I):

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

(Emphasis added). See also In re Law, 2008 WL 1867971 at *13 n. 70 (Bankr. D. Kan. 2008):

> The Court also notes that even if this were a court-ordered wage garnishment for the collection of an unsecured debt, such as a money judgment for non-payment of a credit card, allowing its deduction on Line 33 would totally undermine one purpose of bankruptcy-equal distribution of debtor's assets among the same class of creditors. Would Debtor argue that if he had a court ordered garnishment for an unsecured Capital One judgment, he could deduct that garnishment from Line 33, and just keep that amount each month? Or would he argue that Capital One, in this hypothetical, would be entitled to receive repayment of 100% of its unsecured debt while all other unsecured creditors received some lesser amount? Line 33 was meant to apply to those court ordered payments that will be an ongoing obligation, such as for child support, and the Court can see no policy reason why a wage garnishment for an unsecured debt, even if court-ordered, would be appropriately deducted.

The Trustee's objection to line 33 is well taken. Debtors should amend line 33 to be zero.

TELECOMMUNICATIONS SERVICES

The Debtors list $189.00 as an expense for telecommunications services. Form 22C's instruction for line 37 states "Enter the total average monthly amount that you actually pay for telecommunication services other than your basic home telephone and cell phone service - such as pagers, call waiting, caller id, special long distance, or internet service - to the extent necessary for your health and welfare or that of your dependents."[1] Exhibit 2 is a copy of the Debtors' cable bill. It shows that they have "bundled" phone, internet and cable services. The figure on Form 22C is the total. The Court finds that it should deduct that part attributable to basic telephone service, in the amount of $36.75. Debtors should amend line 37 to be $152.00.

EDUCATION EXPENSES

The Debtors list $137.50 as an expense for education expenses. At trial, Debtors stated their son is in public school and this figure represents costs associated with him being in the

---

[1]The IRS Local Standards for housing and utilities include telephone and cell phone. Internal Revenue Manual, § 5.15.1.7(4)(A). In re O'Connor, 2008 WL 4516374 at *14 (Bankr. D. Mont. 2008). (The Internal Revenue Manual is available at: http://www.irs.gov/irm/index.html ). Allowing telephone expense on line 37 would double count that expense.

choir. “But educational expenses are deemed ‘necessary’ only if the education producing the expenses ‘is required for a physically or mentally challenged child and no public education providing similar services is available,’ or if it is ‘for the taxpayer and ... [is] required as [a] condition of employment.’” In re Saffrin, 380 B.R. 191, 193 (Bankr. N.D. Ill. 2007)(citing Internal Revenue Manual § 5.15.1.10 at ¶ 3). Despite the value of this activity for the child’s education and character development, unfortunately the Court does not have the discretion to allow this expense.

ADDITIONAL FOOD AND CLOTHING EXPENSE

Line 24A of Form 22C is titled “National Standards: food, apparel and services, housekeeping supplies, personal care, and miscellaneous.” The Internal Revenue Manual § 5.15.1.7 at ¶ 1 and 3 states:

> Allowable expenses include those expenses that meet the necessary expense test. The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income. The expenses must be reasonable. The total necessary expenses establish the minimum a taxpayer and family needs to live.
>
> Food, Clothing and Other Items - These establish reasonable amounts for five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. These standards come from the Bureau of Labor Statistics (BLS) Consumer Expenditure Survey. Taxpayers are allowed the total National Standards amount monthly for their family size, without questioning the amounts they actually spend.
> Note:

All five standards are included in one total national standard expense.

11 U.S.C. § 727(b)(2)(A)(ii)(I) also provides: “In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.” Debtors did not prove that the $42.00 listed on line 44 was reasonable and necessary. The Debtors should amend line 44 to be zero.

SAXON MORTGAGE PAYMENT

Form 22C allows a deduction for contractual payments on secured debts in the 60 months following the bankruptcy. 11 U.S.C. § 707(b)(2)(A)(iii). Debtors had a $7,190.54 arrearage on their home mortgage when they filed their Chapter 13. See Proof of Claim 13. Debtors testified that they had an agreement with the lender to catch up on the arrears by paying $1,328.06 monthly, which included the current payment and part of the arrearage. The proof of claim attachment shows a contractual payment due of $700.36. Ms. Cleaver testified that the actual current payment, with insurance and taxes, is $775.00. Debtors listed the payment amount at $1,328.06 on line 47 of Form 22C.

Form 22C also allows a deduction for curing arrears on a primary residence by including, on line 48, 1/60th of the cure

amount. Debtors listed Saxon Mortgage on line 48 with a $70.54[2] cure amount. It should be obvious that Debtors cannot claim a monthly payment of $1,328.06, a figure that would cure the mortgage arrearages quickly, and claim a cure amount on line 48 for the same arrearage. And, because line 48 specifies how a mortgage arrearage is cured, the cure amount cannot be factored into line 47. Therefore, Debtors should amend line 47 to reflect the actual payment of $775.00[3].

Finally, as a result of the above amendments the plan payment will obviously change, which will result in a change in line 50's average monthly administrative expense of the Chapter 13 case.

**CONCLUSION**

The Court will enter an Order denying confirmation of the First Amended Plan and allowing the Debtors three weeks in which they can amend their Form 22C and submit a Second Amended Plan in conformity with this Opinion.

Honorable James S. Starzynski
United States Bankruptcy Judge

---

[2]Debtors computed this amount without the benefit of the proof of claim. The actual arrearage amount divided by 60 is $119.84. Debtors should amend line 48 of Form 22 to this amount.

[3]Line 47 should include taxes and insurance required by the contract. Bermann, 399 B.R. at 218.

Date Entered on Docket: March 22, 2010

Copies to:

Eric D Dixon
301 S Avenue A
Portales, NM 88130-6288

Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111